IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ROBERT LEE PAYNE, III                                                                                         PLAINTIFF
Reg. #32548-009

v.                                       4:22CV00805-BRW-JTK

LANGLEY, et al.                                                                                              DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson.  Any party may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I.      Introduction**

Robert Lee Payne, III ("Plaintiff") is incarcerated at the Memphis, Tennessee, Federal Corrections Institution.  Plaintiff's claims in this case arose during the time he was in custody at the Pulaski County, Arkansas, Detention Center.  Plaintiff sued Nurse Tammy Langley, among others,[1] alleging deliberate indifference to his serious medical needs.

---

[1] Plaintiff claims against Pulaski County Sheriff Eric Higgins and TurnKey Health Director/Supervisor Lowe have been dismissed. (Doc. Nos. 8, 11).

Defendant Langley has filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 25-27). Plaintiff has responded. (Doc. Nos. 33, 34). After careful consideration, and for the reasons set out below, the Court recommends Defendant Langley's Motion be granted.

**II.    Plaintiff's Complaint**

In his Amended Complaint, Plaintiff sued Nurse Langley in her personal and official capacities. (Doc. No. 7 at 1-2). Plaintiff alleges that on July 22, 2022, he was in an altercation with another inmate when the other inmate bit off Plaintiff's finger. (Id. at 4). When medical staff responded to the incident, Defendant Langley put Plaintiff's detached finger in a carton of milk that was given to Nurse Langley by yet another inmate. (Id.) Plaintiff, and his detached finger, were transported to UAMS. (Id.) Once at UAMS, Plaintiff was told "that they could not re-attach [his] finger because it was in milk." (Id.)

Plaintiff sued Defendant Langley in her official capacity "because the policy or custom, that Langley (Turn Key Health) used, of immersing (Plaintiff's) detached finger in a milk carton full of milk was the driving force behind the hospital not being able to re-attach (Plaintiff's) finger . . . ." (Id.). As to Plaintiff's personal capacity claims, he maintains that Defendant Langley "intentionally interfered with prescribed treatment by receiving a carton of milk . . . thus preventing (Plaintiff's) finger from being reattached . . . ." (Doc. No. 7 at 5). Plaintiff seeks damages. (Id. at 6).

**III.    Summary Judgment Standard**

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party

2

bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."  Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.  Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

IV.  Discussion

Plaintiff alleged deliberate indifference to his serious medical needs.

A.  **Personal Capacity Claims**

Plaintiff was a pretrial detainee at the time of the incident giving rise to this lawsuit.  (Doc. No. 7 at 3).  Prison officials violate a pretrial detainee's rights under the Due Process Clause of the Fourteenth Amendment when they show deliberate indifference to his serious medical needs. Ivey v. Audrain County, Missouri, 968 F.3d 845, 848 (8th Cir. 2020).  To succeed on a claim of

3

deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Id. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). "Mere negligence is not sufficient to support a cause of action under § 1983." Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993).

  B.  **Material Facts**

Defendant Langley was employed by Turn Key Health Clinics as an Licensed Practical Nurse. (Doc. No. 26 at ¶ 2). On July 22, 2022, Plaintiff was involved in an altercation with another inmate. (Id. at ¶ 3). The other inmate bit off Plaintiff's left-hand pinky finger to the first knuckle. (Id.). Defendant Langley responded to the incident and administered treatment to Plaintiff's finger. (Doc. No. 26 at ¶ 4; Doc. No. 25-1 at 262). Defendant Langley notified Lauren Messersmith, the medical provider, who instructed Plaintiff to provide first aid and then transport Plaintiff to the hospital. (Doc. No. 26 at ¶ 5; Doc. No. 25-1 at 262). According to Defendant Langley, her immediate concern was to stop the bleeding and obtain stable vital signs before transport. (Doc. No. 26 at ¶ 6). As a secondary concern, Defendant Langley also attempted to preserve Plaintiff's detached finger in a carton of milk, the only cold container available to her at the scene. (Id. at ¶ 7). Based on her nursing judgment in the moment, Defendant Langley beloved it was appropriate to place the detached fingertip into the milk carton to attempt preservation. (Id. at ¶ 9). Defendant Langley, however, knew there was no real likelihood that the fingertip could be reattached due to the mechanism of injury. (Id. at ¶ 10).

On July 22, 2022, Defendant Langley noted in Plaintiff's Chart Notes:

4

> Called to unit on called 4, upon entering unit detainee sitting at table holding towel to left hand, towel removed left hand 5th digit had been bitten off to first knuckle by another detainee, provider notified and on scene with orders to send to ER per MEMS. Pressure applied to site with minimal bleeding noted, vital signs obtained and stable, detainee denies pain states finger is "numb". MEMS notified per security and en route for transport.

(Doc. No. 26. at ¶ 8; Doc. No. 25-1 at 262).

Plaintiff was transported by ambulance to the UAMS Emergency Department where Plaintiff underwent x-rays ordered by Dr. Joseph Watkins—not a party to this action. (Doc. No. 26 at ¶¶ 11-12). Plaintiff was treated by Gerald W. Kempton, MD—also not a party to this action—who referred Plaintiff for consultation with orthopedic surgery. (Doc. No. 26 at ¶ ¶13, 14; Medical 21, 31). Non-party orthopedic surgeon Jason P. Eckels assessed Plaintiff's injury on July 22, 2022. (Doc. No. 26 at ¶ 15). Dr. Eckels performed a revision amputation, removing a larger portion of the remining pinky, and scheduled Plaintiff for clinic follow up in two week with another non-part physician. (Id. at ¶ 17). A sprint was placed on Plaintiffs finger, and Tetanus and Unasyn were administered in the emergency department, and Plaintiff was discharged. (Id. at ¶¶ 17, 18).

On July 26, 2022 Plaintiff received follow-up treatment from Lauren Messersmith. (Id. at ¶ 19). On August 15, 2022, Defendant Langley completed a "Wound Care Assessment Flowsheet" form, noting that the treatment rendered was wound care per providers, noted swelling had improved and there were no signs of infection. (Id. at ¶ 20).

Plaintiff disputes that Defendant Langley applied pressure to his injured finger; he says he applied the pressure himself. (Doc. No. 34 at ¶ 1). Plaintiff also disputes that the incident took place in the dining hall, and points out a scrivener's error in Defendant Langley's statement of fact. (Id. at ¶¶ 2-4). He further says that the facts presented generally are inaccurate, such as that Defendant Langley had no equipment with her to check his vital signs. (Id. at ¶ 5). These disputes,

5

however, are not material. Plaintiff further disputes that Defendant Langley's placement of his detached fingertip in a carton of milk was appropriate. (Id. at ¶¶ 6-8). For example, he maintains that Defendant Langley could have gotten a container with ice in which to transport his finger. (Id.) .

**C.     Analysis**

Plaintiff's claims against Defendant Langley in his Amended Complaint are limited to the method she used to preserve Plaintiff's detached finger. In support of Defendant Langley's Motion, she submitted the Declaration of Absolom Tilley, M.D. (Doc. No. 25-3). According to Tilley, Defendant Langley timely and appropriately treated Plaintiff's finger. (Id. at ¶ 11). Plaintiff provided no medical evidence to dispute this conclusion.

Further, in similar cases courts have found that the plaintiff's claim more closely resembled negligence rather than deliberate indifference. See Barraza v. Montgomery, No. 3:17-CV-1048-MMA-RBB, 2017 WL 3194743, at *4-*5 (S.D. Cal. July 27, 2017) (where detached ear was not reconnected, court pointed out negligence does not state a claim under § 1983 and difference of opinion between doctor and prisoner regarding treatment does not amount to deliberate indifference); Davis v. Grounds, No. 11-CV-621-MJR, 2012 WL 3562744, at *3 (S.D. Ill. Aug. 17, 2012) (plaintiff could not establish deliberate indifference where detached ear could not be reattached); Thompson v. Simpson, No. CIV.A. 705CV00503, 2006 WL 681026, at *5 (W.D. Va. Mar. 15, 2006), report and recommendation adopted, No. CIV.A. 705CV00503, 2006 WL 903221 (W.D. Va. Apr. 3, 2006) (no deliberate indifference where detached ear could not be reattached).

As in the cases cited above, Plaintiff cannot establish deliberate indifference. Medical records indicate that Defendant Langley promptly tended to Plaintiff and had him transported by ambulance to the hospital. Her decision to place Plaintiff's fingertip in a carton of milk may well

have been a poor decision, negligent. But Plaintiff has not come forward with evidence establishing that Defendant Langley ignored Plaintiff's severed finger or the risk that it could not be reattached. Without that showing, no reasonable jury could conclude that Defendant Langley was deliberately indifferent to Plaintiff's serious medical needs. Summary judgment in Defendant Langley's favor is appropriate.

### B. Official Capacity Claims

Plaintiff sued Defendant Langley in her personal and official capacities. Because Plaintiff cannot establish individual liability on the underlying substantive claims, his official capacity claims also fail. Jackson v. Buckman, 756 F.3d 1060, 1067, n.3 (8th Cir. 2014) ("Absent an underlying constitutional violation, . . . official-capacity . . . claims . . . necessarily fail.")

### C. No Material Facts in Dispute

Where, as here, Defendant Langley has moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude summary judgment in Defendant Langley's favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendant Langley's Motion should be granted. Because no other claims remain pending, the Court also recommends that this action be dismissed.

## V. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Langley's Motion for Summary Judgment (Doc. No. 25) be GRANTED;

2. Plaintiff's claims against Defendant Langley be DISMISSED with prejudice;

3. This action be DISMISSED.

Dated this 15th day of September, 2023.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE